IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GREGORY F. WATKINS, § | | |
| TDCJ No. 02116666, § | | |
|     Petitioner, § | | |
| § | | |
| V. § | A-18-CV-00715-LY | |
| § | | |
| LORIE DAVIS, § | | |
|     Respondent. § | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates. Petitioner, Gregory Watkins, is pro se in this matter and has paid the full filing fee. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), Respondent's Answer (ECF No. 9), and Petitioner's Reply (ECF No. 11). For the reasons set forth below, the undersigned recommends that Petitioner's Application for Writ of Habeas Corpus be **denied**.

**STATEMENT OF THE CASE**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 403rd District Court of Travis County, Texas. A jury found Petitioner guilty of delivery of cocaine in a drug-free zone, enhanced by a prior felony conviction, and assessed punishment at a term of seven years and six months confinement. In this habeas action

Petitioner asserts he was denied the effective assistance of counsel; the evidence was insufficient to support his conviction; and that evidence was withheld, altered, and destroyed.

**A. Background**

The Thirteenth Court of Appeals summarized the testimony presented at Petitioner's trial as follows:

> At 10:08 P.M. on October 21, 2015, during an undercover drug operation, appellant allegedly sold .182 grams of crack cocaine to Officer Patrick Reed for $25. The transaction took place at or near the northwest corner of East 7th Street and Red River Street in Austin, Texas. According to Officer Reed's testimony, appellant removed the narcotics from his mouth, then discretely exchanged the drugs for money. Officer Reed paid with predetermined "buy money" that had specific notations logged with his team. While multiple videos show Officer Reed interacting with an individual at the time of the transaction, no video shows the cocaine and money transferring hands. Officer Reed described the individual as a tall black male, wearing a black t-shirt, blue jean shorts, and a backpack. In accordance with the "buy/walk" procedure, Officer Reed returned with the drugs to the field team a few blocks away. Officer Reed testified that a "buy/walk" procedure involves an undercover officer purchasing contraband and leaving the scene with the drugs while another officer later arrests the individual.
>
> Officer Reed testified that a school was in the vicinity of the alleged drug transaction. According to Officer Reed, St. David's Episcopal Day School is located at 301 East 8th Street. Officer Reed testified that he utilized two methods to measure the distance from the transaction location to the school: Google Earth on his computer and the GPS device in his patrol car. From address to address, Google Earth represented the distance as 722 feet while his patrol car's GPS indicated that the two locations were 739 feet apart. Sara Davis, an analyst for the Austin Police Department, testified that she used ArcGIS software to conclude that the transaction zone was about 750 feet from the school. However, she estimated the perimeter of the school by using general, rather than fixed, property lines when measuring the distance between locations. Finally, appellant introduced evidence showing that two other direct routes, not calculated by the State, would place the two addresses more than 1,000 feet apart, beyond the range prohibited by the drug-free zone statute. []
>
> Officer Tyson Setzler also testified at trial. According to Officer Setzler, he conducted surveillance the night of the alleged transaction. During his surveillance, he witnessed Officer Reed approach an individual at the corner of East 7th and Red River Street. According to Officer Setzler's testimony, the individual was wearing

> a dark-colored short sleeve shirt, light-colored blue jean shorts, a dark hat with a light-colored bill and white writing, white shoes and socks, and a dark-colored backpack. Officer Setzler testified that after the transaction occurred, Officer Reed provided the surveillance team with auditory confirmation that a deal had occurred and informed the team who to follow. While Officer Setzler monitored the individual, he was in audio contact with Officer Justin Berry, the "takedown officer," who eventually stopped appellant. At trial, Officer Setzler elected not to identify appellant as the individual who transferred the drugs because he was not personally at the scene during the transaction and was not at Officer Berry's stop.
>
> Officer Berry testified that, based on Officer Setzler's description, he stopped an individual, around 10:30 P.M., a few blocks from the transaction because of the individual's suspicious lurking near an ATM. That individual told Officer Berry that his name was Gregory Watkins and that his birthdate was April 21, 1970; he provided Officer Berry unofficial identification paperwork. According to Officer Berry, he then performed a regular frisk, commonly associated with a safety search, rather than a more extensive pat-down search. Officer Berry testified that he never searched appellant's person or backpack for drugs and never asked for any of the marked, predetermined buy money. Officer Berry's dash cam recorded his interactions with the individual. Officer Berry did not arrest appellant that evening. During trial, Officer Berry stated he verified the individual's identification through a reliable database, then confirmed under oath that appellant, who was at trial, was the individual he stopped.
>
> During trial, Officer Reed testified that the individual on Officer Berry's dash cam video was the individual from whom he purchased drugs.
>
> At the completion of the State's case, appellant filed a motion for a directed verdict, which the trial court denied.

*Watkins v. State*, No. 13-16-00387-CR, 2017 WL 2808101, at *1-2 (Tex. App.–Corpus Christi-Edinburg 2017, pet. ref'd). Petitioner did not testify at his trial, and the jury deliberated for approximately an hour and a half before reaching its verdict. (ECF No. 10-19 at 170-71). Petitioner did testify during the punishment phase of the proceedings, telling the jury that he was raised in foster care and had been diagnosed as schizophrenic. (ECF No. 10-20 at 100-07, 132-35).

Petitioner appealed his conviction, arguing there was insufficient evidence to identify him as the individual who sold the drugs to Officer Reed and insufficient evidence that the drugs were

3

sold within a drug-free zone. *Watkins*, 2017 WL 2808101, at *1. The appellate court overruled both issues and affirmed the trial court's judgment. *Id.* at *4. The Texas Court of Criminal Appeals denied a petition for discretionary review. (ECF No. 10-10).

Petitioner sought a state writ of habeas corpus, asserting he was denied the effective assistance of counsel; the video evidence presented by the State was misleading, distorted, edited, enhanced, and unclear; the jury was not presented with exculpatory evidence; Officer Reed purposefully did not record identifying information; and the evidence was insufficient to support his conviction. (ECF No. 10-27 at 18-29). The Court of Criminal Appeals denied the writ without written order. (ECF No. 10-26).

**B. Petitioner's Grounds for Relief**

In his federal habeas petition Petitioner asserts the State withheld evidence; video evidence was deleted, altered, or destroyed by the Austin Police Department or the State; the evidence was insufficient to support his conviction; and he was denied the effective assistance of counsel.

**C. Exhaustion of State Court Remedies**

Respondent allows Petitioner's petition is timely and not successive. Respondent asserts some of Petitioner's habeas claims are procedurally defaulted. (ECF No. 9 at 2).[1]

**ANALYSIS**

**A. The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v.*

---

[1] Regardless of any failure to properly exhaust any of his claims in the state courts, all of Petitioner's claims may be denied on the merits. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

4

*Richter*, 562 U.S. 86, 97-100 (2011). Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted). Where, as here, the state-court's denial of a petitioner's claims is unexplained, a federal habeas court reviews the state court's "ultimate decision" for reasonableness. *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018), *cert. denied,* 2018 WL 4600003 (Nov. 19, 2018) (No. 18-380). The federal habeas court "must hypothesize the reasons that supported, or could have supported, the denial consistent with Supreme Court precedent. The decision is an 'unreasonable application' under 28 U.S.C. § 2254(d) only if, after this hypothetical inquiry, [the federal habeas court] determine[s] there was no reasonable basis for it." *Id.* (internal citations omitted).

**B. The *Strickland* Standard**

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, the petitioner must establish counsel's performance was deficient and the deficient performance prejudiced the defense. *Id.* at 687. A habeas petitioner has the burden to prove both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). Unless the petitioner demonstrates both deficient performance and prejudice it "cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

When deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 688-89. Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Id.* at 689. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). Additionally, the reasonableness of counsel's actions is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. When considering a state court's application of *Strickland*, the Court's review must be "doubly deferential," to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003)).

### C. Merits

**1. Ineffective assistance of counsel**

Petitioner asserts counsel's performance was deficient because counsel did not present Petitioner with the entire police report and did not ensure Petitioner was able to view all of the video evidence prior to trial. (ECF No. 1 at 11). Petitioner alleges counsel merely described the video evidence to him as incriminating and told him it would be in his "best interest" to plead guilty. (ECF No. 1 at 12). Petitioner asserts his "ex-district attorney-turned public defender worked in the interest of the state," (ECF No. 1 at 6), arguing counsel was loyal to the prosecution because he was "an ex-district attorney." (ECF No. 1 at 12). He contends: "The fact that he didn't show me all the video footage or allow me to read the written police report makes him [ineffective] as an attorney." (*Id.*). The Court of Criminal Appeals denied relief on all of the ineffective assistance of counsel claims raised in Petitioner's state habeas action.

At a pretrial hearing the State offered to waive the drug-free zone enhancement and agree to the minimum sentence of two years confinement if Petitioner pleaded guilty. (ECF No. 10-16 at 5-6). Defense counsel informed the trial court there was a videotape of the transaction between Petitioner and Officer Reed, which had not been provided to the defense. (ECF No. 10-16 at 6, 8). The prosecutor stated: "I'm sure we have it." (ECF No. 10-16 at 7-8). The following colloquy then occurred:

> THE COURT: You're saying you have a videotape of the actual transaction itself?
> [The State]: I have not reviewed it myself, but we do have video footage. I have to go back and look at it, but I can review also — I'll get that [HALO] video and see if we can see it from that perspective, which is the City's cameras over the ARCH. But I'll get that in preparation for trial.
> ***

> [Defense Counsel]: Do you want to set it on the next docket call? You're not going to plead, is that correct?
> THE DEFENDANT: No, I'm not. I didn't do this.

(ECF No. 10-16 at 8-9). At the next hearing, the following colloquy occurred:

> THE COURT: State, has there been an offer made that you have put on the record?
> [The State]: Yes, Your Honor. We would waive the drug free zone and all of the enhancements and offer two years. Originally I said that it expired April 28th of 2016; however, we did acquire a HALO video with video footage of the transaction and the arrest and it just — I'm willing to leave it open today for two years which is the absolute positive minimum on this case.
> THE COURT: So, Mr. Watkins, you understand what they are saying?
> THE DEFENDANT: Yes, I do.
> THE COURT: Is it your desire to accept or reject that offer?
> THE DEFENDANT: I have to reject that offer because it's not me in the video.

(ECF No. 10-17 at 5). These colloquies indicates Petitioner did view the video of the transaction and his arrest and nonetheless determined to contest his guilt at trial.

At trial, after the State rested its case and, outside the presence of the jury, counsel made a record of Petitioner's decision not to testify. (ECF No. 10-19 at 129-30). Then the following colloquy occurred:

> [Defense counsel]: Do you have any complaints about my representation of you?
> THE DEFENDANT: No.
> [Defense counsel]: Do you have any complaints about my preparation?
> THE DEFENDANT: No, sir.
> [Defense Counsel]: Are you satisfied with my representation of you so far?
> THE DEFENDANT: Yes, sir.

(ECF No. 10-19 at 130). This colloquy indicates Petitioner believed his counsel's pretrial preparation and trial strategy were both adequate and approved by Petitioner.

The state court could reasonably conclude Petitioner's counsel was not ineffective. A review of the trial transcript indicates counsel was familiar with the evidence produced by the state, including the video evidence, and counsel had a reasonable trial strategy, i.e., to assert the defenses

of mistaken identity and reasonable doubt.[2] Additionally, Petitioner is unable to establish any prejudice arising from counsel's alleged failure to review the entire police report with Petitioner, and the transcript of the second pretrial proceeding indicates Petitioner had reviewed the video-taped evidence.

Petitioner contends he was not provided with video that purportedly showed him "smoking drugs." (ECF No. 1 at 11). Broadly construing this claim, Petitioner implies he would have accepted the plea offer if he had known the jury would be shown this video. However, this claim is belied by Petitioner's statement at the pretrial hearing that he would not plead guilty because he was not the individual who sold Officer Reed drugs. Additionally, defense counsel filed a successful motion in limine which prevented the jury from seeing the portion of the video which purportedly showed Petitioner "smoking drugs." (ECF No. 10-19 at 81, 137-38).

Nor did counsel have a conflict of interest because he had previously worked as a prosecutor. To establish a conflict of interest on the part of defense counsel, the petitioner must show "an actual conflict of interest adversely affected his lawyer's performance," such as multiple representation of adverse interests, or another "type of conflict" which actually prejudiced the defendant. *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). Prior

---

[2] Counsel told the jury in opening argument:
. . .The evidence will also show you that when they stopped and detained my client, the evidence will show that he had no cocaine on him and, more importantly, he didn't have any of the money that he supposedly had gotten from the police officer. Neither one of these items were on him.
   So the evidence will show you when you get done that there's clearly a reasonable doubt that this is within 1,000 feet of the school. Also, the evidence will be clear to you beyond a reasonable doubt that the State has failed to prove beyond a reasonable doubt that my client delivered cocaine to a police officer . . .
(ECF No. 10-19 at 13-14). Counsel emphasized that the police purposefully did not search Petitioner or his backpack shortly after the transaction to establish his possession of the money transferred by Officer Reed, although they could legitimately have done so. (ECF No. 10-19 at 101-02, 105).

employment as a prosecutor, standing alone, does not create a conflict of interest, even where the prior prosecutorial experience included prosecuting the defendant. *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997). The trial transcript reveals counsel's performance was not below prevailing professional norms; counsel mastered the evidence, ably cross-examined the State's witnesses, and presented and argued a sound defense to the jury. Petitioner has not shown counsel's putative conflict caused him to forego a successful trial strategy.

Because Petitioner has failed to establish either deficient performance or prejudice, his *Strickland* claims are without merit and must be denied.

### 2. *Brady* claims

Citing *Brady v. Maryland*, Petitioner alleges the State withheld portions of available HALO video footage from the jury, noting the video was "edited with no audio or sound." (ECF No. 1 at 6, 14). He further asserts a "portion of the video" showing Petitioner using drugs, "which my lawyer told me about was not shown to the jury." (ECF No. 1 at 6, 14).

The elements of a *Brady* claim are: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material" to the defendant's guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). The good or bad faith of the prosecution in suppressing the evidence is irrelevant. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

Petitioner's allegation that the State withheld video evidence from the defense is not supported by the record. The trial transcript indicates defense counsel reviewed all the available video footage prior to trial and, accordingly, Petitioner fails to show the evidence was suppressed. Petitioner has not described how any "edited" portion of video was material to his defense. Even if

the video was edited, the mere possibility that an item of undisclosed information might have helped the defense does not establish the information was "material" sufficient to establish a *Brady* violation; to succeed on a *Brady* claim the defendant must show that the omitted evidence "could reasonably be taken to put the whole case in a different light so as to undermine confidence in the verdict." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997). Petitioner has not shown that any omitted portion of the video or audio record of the transaction or his detention by Officer Berry would strengthen his defense. *See Floyd*, 894 F.3d at 163 (noting " Supreme Court precedent defines evidence tending to strengthen a defense as favorable evidence under *Brady*.").

Furthermore, although Petitioner asserts the video of him using drugs was "material" to his punishment, he supports this argument only by asserting "jurys (sic) are likely to give less time to addicted drug users than to drug dealers." (ECF No. 1 at 14). Because Petitioner testified during the punishment phase that he was an addict and that he dealt only small quantities of drugs in order to support his addiction, it is not likely the omitted video evidence of Petitioner smoking something, which was not shown to the jury, was material to his punishment. Additionally, this evidence was not "withheld;" a defendant cannot establish a *Brady* claim based on withheld evidence if he had knowledge of the evidence prior to trial. *See, e.g., West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) (holding "[e]vidence is not 'suppressed' if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence."); *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994). Because Petitioner has not established the elements of a *Brady* claim regarding omitted video footage or audio evidence, relief on these claims must be denied.

### 3. *Youngblood* claims

Petitioner alleges that the State or the Austin Police Department destroyed video and audio from Officer Reed's bodycam. (ECF No. 1 at 7, 16). To be entitled to relief on a claim of lost evidence, the exculpatory value of the evidence must be apparent before the evidence was destroyed. *California v. Trombetta*, 467 U.S. 479, 489 (1984). Petitioner has made no showing that any video or audio evidence was destroyed, or that any video or audio evidence was apparently exculpatory before the alleged destruction of the evidence.

If the exculpatory value of the purportedly destroyed evidence was in question, the failure of law enforcement to preserve the evidence does not violate the Due Process Clause absent a showing of bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). Petitioner makes only a conclusory and unsupported assertion that the State or the police department destroyed any audio or video evidence, and he makes only a conclusory and unsupported allegation that these entities acted in bad faith.

With respect to the HALO video, nothing in the record suggests that the State intentionally removed audio from the footage or that the audio would have been useful to Petitioner's defense. Petitioner does not delineate what the purportedly deleted video would have shown or how this omission prejudiced his defense. His claim consists entirely of the statements: "The [HALO] video evidence shown to the jury was computer edited with no audio or sound;" "The [HALO] video[] had been computer edited to mislead the jury;" and "By not showing the entire video from beginning to end allowed [the prosecutor] to delete[] portions that would prove that Officer [] Reed did not receive drugs . . ." (ECF No. 1 at 6, 14.9) Petitioner's conclusory allegations of *Brady* violations are

insufficient to establish an entitlement to habeas relief. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (holding speculative or conclusory allegations cannot support a *Brady* claim); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 & n.2 (5th Cir. 1983) (holding that, absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value).

### 4. The evidence was insufficient to support his conviction

Petitioner contends that there was insufficient evidence to support his conviction. (ECF No. 1 at 7). Petitioner raised this claim in his appeal, and relief was denied.

The appellate court found the evidence was sufficient to establish Petitioner was the person who sold less than a gram of cocaine to an undercover officer on October 21, 2015. *Watkins*, 2017 WL 2808101, at *2-4, 10. The court reasoned:

> A person commits the offense of manufacture or delivery of a controlled substance if he knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance in Penalty Group 1. Tex. Health & Safety Code Ann. § 481.112(a). Penalty Group 1 includes, inter alia, cocaine. *Id.* § 481.102(3)(D) []. The knowing delivery of a controlled substance is a state-jail felony if the amount of controlled substance, by aggregate weight, including adulterants or dilutants, is less than one gram. *Id.* § 481.112(b). A state-jail felony for distribution of a controlled substance is enhanced to a third-degree felony if it is shown that the offense was committed in, on, or within 1,000 feet of any real property that is owned, rented or leased to a school or school board. *Id.* § 481.134(d)(1).
>
> \*\*\*
>
> There is sufficient evidence, when considered collectively, that appellant sold Officer Reed cocaine. *See Johnson*, 871 S.W.2d at 186. Although the State lacked video evidence of appellant selling the cocaine, the description of appellant provided by the buying officer to the surveillance team, then ultimately to the takedown officer, acted as connective tissue that eventually led to Officer Berry stopping him.

13

Specifically, Officer Reed immediately returned to the field team where a field technician tested the contraband as a presumptive positive of cocaine. Later, a lab technician verified the presumptive positive as .182 grams of cocaine. Officer Reed provided his team with a description of appellant as wearing a black t-shirt, blue jean shorts, and a backpack at the time of the exchange. This description was additionally confirmed by Officer Setzler who operated the surveillance cameras. Officer Berry testified and provided a dash cam video of an individual matching that description whom he stopped within twenty minutes of the initial incident. That individual, on video, identified himself as appellant. Moreover, during trial, Officer Reed testified that the man depicted on the dash cam video was, in fact, the individual from whom he purchased drugs. The picture Officer Berry provided was taken after appellant offered his name, birthdate, and corresponding identification documents. Each of the officers' similar descriptions would lead to a reasonable inference that Officer Berry stopped the individual from whom Officer Reed purchased cocaine; such circumstantial evidence is sufficient. *See Guevara*, 152 S.W.3d at 49; *see also Marines v. State*, 292 S.W.3d 103, 107 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (finding sufficient evidence existed when a police officer arrested an individual who matched the witnesses' descriptions of the shooter).

The lack of video evidence of the exchange and Officer Berry's decision not to arrest appellant or to perform a more extensive search of appellant that evening are not dispositive. *See Guevara*, 152 S.W.3d at 49. Instead, the combined and cumulative force of evidence rationally supports the conviction. *See Johnson*, 871 S.W.2d at 186. While performing a more extensive search may have led Officer Berry to discover additional drugs on appellant's person or arresting appellant could have allowed Officer Reed to verify that appellant was the individual from whom he purchased drugs, as both Officers Reed and Berry explained, the incident with appellant that evening was part of a broader operation. According to the officers' testimony, Officer Berry decided not to arrest appellant in accordance with his orders to avoid exposing the undercover operations in which Officer Reed and other agents were actively participating. Appellant suggests that this Court should evaluate what other reasonable steps Officer Berry could have taken that evening. However, the role of this Court is to consider the sufficiency of existing evidence rather than the lack of hypothetical evidence. *See Jackson*, 443 U.S. at 319. This Court, instead, defers to the factfinder's assessment of both the officer's and the evidence's credibility. *See Brooks*, 323 S.W.3d at 894. As discussed earlier, the evidence provided by the State, in its combined and cumulative force, supports a rational judgment for the State in regards to appellant's identity as the narcotics dealer.

*Id.*, 2017 WL 2808101, at *3-4.

The appellate court's denial of this claim was not contrary to or an unreasonable application of federal law. The controlling federal law with regard to an insufficiency of the evidence claim is stated in *Jackson v. Virginia*, 443 U.S. 307 (1979). To be entitled to relief on a sufficiency of the evidence claim, a petitioner must prove that no rational trier of fact could have found the existence of facts necessary to establish guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324-26. When applying this standard, all evidence is viewed in the light most favorable to the prosecution, and all credibility choices and conflicts in the evidence are resolved in favor of the verdict. *Id.* at 319; *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A federal habeas court "must defer to the factual findings in the state court proceedings," and "respect the ability of the fact-finder to evaluate the credibility of the witnesses." *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989).

In this matter, the jury's decision was predicated on circumstantial evidence, and the testimony of Officer Reed and Officer Berry as supported by the video evidence. The credibility of witnesses is generally beyond the scope of review in a federal habeas corpus proceeding applying *Jackson*. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Ramirez v. Dretke*, 398 F.3d at 695. Additionally, circumstantial evidence is sufficient to support a conviction under the *Jackson* standard. *Green v. Johnson*, 160 F.3d 1029, 1047 (5th Cir. 1998); *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

## **CONCLUSION**

Petitioner has not established his counsel's performance was deficient or that he was prejudiced by counsel's alleged errors. Petitioner has not established he is entitled to relief pursuant to *Brady* or *Youngblood*, or that the evidence was insufficient to support his conviction.

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus (ECF No. 1) be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the denial of the section 2254 petition, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985).

**SIGNED** on January 7, 2019.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE